**FILED**

January 22, 2025

**Fifteenth Court of Appeals
Christopher A. Prine
Clerk of Court**

ACCEPTED
15-24-00109-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/22/2025 10:05 PM
CHRISTOPHER A. PRINE
CLERK

RECEIVED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/22/2025 10:05:15 PM
CHRISTOPHER A. PRINE
Clerk

**O**RAL **A**RGUMENT **N**OT **R**EQUESTED

**NO.  15-24-00109-CV**

**IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT OF TEXAS
AT AUSTIN**

---

**BRANDON HODGES, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS TRUSTEE OF DISTRICT FOR MIDLAND ISD, ET AL.,**

*Appellants,*

v.

**PECOS-BARSTOW-TOYAH INDEPENDENT SCHOOL DISTRICT, ET AL.,**

*Appellees.*

---

**Accelerated Appeal from the 201st Judicial District Court
Travis County, Texas
Cause No. D-1-GN-24-005018**

---

**APPELLANTS' BRIEF**

---

**Byron K. Henry**
State Bar No. 24008909
byron.henry@solidcounsel.com
**Walker Steven Young**
State Bar No. 24102676
walker.young@solidcounsel.com
**SCHEEF & STONE, L.L.P.**
2600 Network Boulevard, Suite 400
Frisco, Texas 75034
Telephone: (214) 472-2100
Facsimile:   (214) 472-2150

**ATTORNEYS FOR APPELLANTS**

## IDENTITY OF PARTIES AND COUNSEL

<u>**Appellants**</u>:

Brandon Hodges, individually and in his official capacity as Trustee of District for Midland ISD

Dr. Mary Bone, individually and in her official capacity as a Trustee of Round Rock ISD, and

Danielle Weston, individually and in her official capacity as a Trustee of Round Rock ISD

**Appellate Counsel:**

**Byron K. Henry**
byron.henry@solidcounsel.com
**Walker Steven Young**
walker.young@solidcounsel.com
**SCHEEF & STONE, LLP**
2600 Network Blvd. Suite 400
Frisco, TX 75034
Telephone: (214) 472-2100
Facsimile: (214) 472-2150

**Trial Counsel:**

**Joseph A. Baker**
joe.baker@solidcounsel.com
**SCHEEF & STONE, LLP**
2600 Network Blvd. Suite 400
Frisco, TX 75034
Telephone: (214) 472-2100
Facsimile: (214) 472-2150

<u>**Appellees:**</u>

Pecos-Barstow-Toyah Independent School District

Athens Independent School District

Beeville Independent School District

Ben Bolt Independent School District

Brownsville Independent School District

Canutillo Independent School District

Connally Independent School District

Crandall Independent School District

Crane Independent School District

**Trial and Appellate Counsel**

**David Campbell**
dcampbell@808west.com
**Kevin O'Hanlon**
kohanlon@808west.com
**O'HANLON DEMERATH & CASTILLO**
808 West Avenue
Austin, Texas 78701
(512) 494-9949

Crowley Independent School District

Forney Independent School District

Fort Stockton Independent School District

Hays Independent School District

Hearne Independent School District

Hereford Independent School District

Jarrell Independent School District

Karnes City Independent School District

Kingsville Independent School District

Lasara Independent School District

Lockhart Independent School District

Manor Independent School District

Mansfield Independent School District

Nacogdoches Independent School District

Plainview Independent School District

Plano Independent School District

Quinlan Independent School District

Red Oak Independent School District

Splendora Independent School District

Sweetwater Independent School District

Temple Independent School District

Terrell Independent School District

Westwood Independent School District

Wills Point Independent School District

## TABLE OF CONTENTS

Identity of Parties and Counsel ............................................................................. 2

Table of Contents................................................................................................... 4

Index of Authorities .............................................................................................. 7

Statement of the Case............................................................................................11

Statement Regarding Oral Argument ...................................................................12

Issue Presented .....................................................................................................13

    I.     The trial court abused its discretion in granting Appellees'
           temporary injunction because the evidence only showed the
           Commissioner's compliance with the law, and Appellees
           did not demonstrate that any action of the Commissioner
           would harm Appellees. ...................................................................13

Statement of Facts.................................................................................................14

    I.     Factual Background .................................................................................14

          A.    To ensure accountability in public education, the
                Legislature requires the Commissioner to grade
                school performance..............................................................15

          B.    As part of a transparent process, the Commissioner
                 releases an accountability manual explaining the
                metrics and standards for the accountability ratings. ...............16

          C.    The accountability manual relies on cut scores to
                 ensure every school or district can achieve an A grade
                and looks back to the preceding year's data when
                necessary so that the manual can be published timely.
                .....................................................................................18

          D.    Since the STAAR test is a crucial element of the
                 Commissioner's accountability grades, it undergoes
                 extensive and independent review to ensure
                 consistency and reliability.....................................................19

1.    The Texas Technical Advisory Committee, an independent group of experts, advises the TEA concerning the STAAR test's validity and reliability. ....................................20

2.    To reduce costs and save time, an automated scoring system is used to review written answers on the STAAR test, and its accuracy is subject to rescoring. ....................................21

II.    Procedural History ........................................................23

Summary of the Argument..................................................25

Argument and Authorities...................................................26

I.    The trial court abused its discretion in granting Appellees' temporary injunction because the evidence only showed the Commissioner's compliance with the law, and Appellees did not demonstrate that any action of the Commissioner would harm Appellees. ...................................................26

A.    Standard of Review...............................................26

B.    Applicable Law.....................................................27

1.    Temporary injunctions should only be issued to preserve the status quo after an applicant has presented evidence of a probable right to the relief sought and imminent harm if the extraordinary relief is not granted. ................................27

2.    A governmental official does not act ultra vires by making an erroneous decision within his authority, and the only relief available for an ultra vires claimant is prospective relief to make the governmental official comply with statutory or constitutional provisions. ...........................28

C.    Discussion ...........................................................29

5

1. Appellees did not demonstrate that they were likely to succeed on the merits because the evidence shows no ultra vires acts...............................29

    a. The Commissioner provided timely notice and Appellees' arguments to the contrary require the Court to add words to the statute.......................................29

    b. The Commissioner did not act ultra vires in relying on the only available data to calculate CCMR rates and that data did not make it mathematically impossible for districts to receive an A grade........................32

    c. The Commissioner followed the law in having the TTAC, an independent third party, confirm the validity and reliability of the STAAR test................................34

    d. The evidence shows no action by the Commissioner outside his authority in administering the STAAR test. ..........................36

2. Regardless, Appellees offered no evidence of imminent and irreparable harm. ....................................39

Conclusion and Prayer .................................................................39

Certificate of Compliance ............................................................42

Certificate of Service ...................................................................43

Index to Appendix ........................................................................44

# INDEX OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*Bell v. Craig*,
555 S.W.2d 210 (Tex. App.—Dallas 1977, no writ) ........................................29

*Chambers-Liberty Cntys. Nav. Dist. v. State*,
575 S.W.3d 339 (Tex. 2019)................................................................29

*City of Denton v. Grim*,
694 S.W.3d 210 (Tex. 2024), reh'g denied (Aug. 30, 2024)............................33

*City of El Paso v. Heinrich*,
284 S.W.3d 366 (Tex. 2009)................................................................28

*Davis v. Huey*,
571 S.W.2d 859 (Tex. 1978)................................................................27

*Electronic Data Sys. Corp. v. Powell*,
508 S.W.2d 137 (Tex. Civ. App.—Dallas 1974, no writ)..............................27

*Fuentes v. Fuentes*,
656 S.W.3d 703 (Tex. App.—El Paso 2022, no pet.) .....................................39

*Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*,
793 S.W.2d 652 (Tex. 1990)................................................................30

*Gunn v. McCoy*,
554 S.W.3d 645 (Tex. 2018)................................................................31

*Hall v. McRaven*,
508 S.W.3d 232 (Tex. 2017)...........................................................28, 29

*Hidalgo Cnty. Water Improvement Dist. No. 3 v. Hidalgo Cnty.*
*Irrigation Dist. No. 1*,
669 S.W.3d 178 (Tex. 2023) ...............................................................31

*Honors Acad., Inc. v. Tex. Educ. Agency*,
555 S.W.3d 54 (Tex. 2018)............................................................28, 29

*Hous. Belt & Terminal Ry. Co. v. City of Hous.*,
487 S.W.3d 154 (Tex. 2016).................................................................28

*Johnson v. Fourth Ct. of Appeals*,
  700 S.W.2d 916 (Tex. 1985) ............................................................27

*Miller Paper Co. v. Roberts Paper Co.*,
  901 S.W.2d 593 (Tex. App.—Amarillo 1995, no writ) ....................27

*Munson v. Milton*,
  948 S.W.2d 813 (Tex. App.—San Antonio 1997, pet. denied) ........28

*Neeley v. W. Orange-Cove Consol. ISD*,
  176 S.W.3d 746 (Tex. 2005) ............................................................14

*Pedernal Energy v. Bruington Eng'g*,
  536 S.W.3d 487 (Tex. 2017) ............................................................31

*Rodriguez v. Doe*,
  614 S.W.3d 380 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ..................30

*State v. Walker*,
  679 S.W.2d 484 (Tex. 1984) ............................................................26

*Sun Oil Co. v. Whitaker*,
  424 S.W.2d 216 (Tex. 1968) ............................................................27

*Tex. Aeronautics Comm'n v. Betts*,
  469 S.W.2d 394 (Tex. 1971) ............................................................28

*Tex. Educ. Agency v. Houston Indep. Sch. Dist.*,
  660 S.W.3d 108 (Tex. 2023) ..............................................29, 35, 38

*Walling v. Metcalfe*,
  863 S.W.2d 56 (Tex. 1993) ..............................................26, 27, 28

## Statutes

19 TEX. ADMIN. CODE chs. 110-13 ..........................................................14

19 TEX. ADMIN. CODE § 97.1001 ...........................................................17

TEX. CIV. PRAC. & REM. CODE § 37.001, et seq. ...................................24

TEX. EDUC. CODE § 4.001(a) .................................................................14

TEX EDUC. CODE § 11.151(b)(2) ...........................................................24

TEX EDUC. CODE § 11.151(b)(4) .................................................................24

TEX EDUC. CODE § 11.151(b)(5) .................................................................24

Tex Educ. Code § 11.151(b)(6) ..................................................................24

TEX. EDUC. CODE § 11.1516(c) ..................................................................24

TEX. EDUC. CODE § 39.021 .......................................................................14

TEX. EDUC. CODE § 39.023(a) ....................................................................14

TEX. EDUC. CODE § 39.023(a-11) .......................................................19, 34, 35

TEX. EDUC. CODE § 39.053(a) ....................................................................17

TEX. EDUC. CODE § 39.053(a-1)(1)(B) ....................................................19, 32

TEX. EDUC. CODE § 39.053(c) ....................................................................19

TEX. EDUC. CODE § 39.053(c)(3) .........................................................15, 16

TEX. EDUC. CODE § 39.053(f) ............................................................17, 33

TEX. EDUC. CODE § 39.054 .......................................................................31

TEX. EDUC. CODE § 39.054(a) ......................................................15, 17, 23, 30

TEX. EDUC. CODE §39.054(a-1) ...............................................................16

TEX. EDUC. CODE § 39.054(a-3) ...............................................................16

TEX. EDUC. CODE § 39.054(b) .............................................................18, 33

TEX. EDUC. CODE § 39.0241.......................................................................38

TEX. EDUC. CODE § 39.0541.......................................................................17

TEX. EDUC. CODE § 39.0542.................................................................30, 31

TEX. EDUC. CODE § 39.0542(a) ...........................................................18, 30

TEX. EDUC. CODE. § 39.0542(b) ...............................................................18

TEX. EDUC. CODE § 39.02302(a) ...............................................................20

TEX. EDUC. CODE § 39.02302(c) ..................................................................20

**Other Authorities**

48 Tex. Reg. 6593, 6593-605 (Nov. 10, 2023) ........................................18

49 Tex. Reg. 951, 951-55 (Feb. 23, 2024) ...............................................17

49 Tex. Reg. 3280, 3280-85 (May 10, 2024) ...........................................17

TEX. CONST. art. VII., § 1.........................................................................14

TEX. EDUC. CODE. § 39.023(a-1).......................................................36, 38

TEX. R. APP. P. 9.4 ....................................................................................42

TEX. R. APP. P. 9.4(i)(1) ............................................................................42

TEX. R. APP. P. 9.5 ....................................................................................43

## STATEMENT OF THE CASE

*Nature of the case:*      After a handful of school districts brought suit against Mike Morath, in his official capacity as the Commissioner of Education (the "Commissioner") to prevent him from releasing school district accountability ratings, which the law requires, Appellants Brandon Hodges, individually and in his official capacity as Trustee of District for Midland ISD, Dr. Mary Bone, individually and in her official capacity as a Trustee of Round Rock ISD, and Danielle Weston, individually and in her official capacity as a Trustee of Round Rock ISD (collectively "Appellants"), intervened in support of the Commissioner. (CR 5-31, 486-516, 99-108, 391-411.)

*Course of proceedings:*      The school districts sought a temporary injunction. (CR 506-509.) The trial court held a two-day evidentiary hearing. (1RR-4RR.) Just before the temporary injunction hearing started, twenty-eight school districts joined the lawsuit, bringing the total number of school districts to thirty-three (collectively "Appellees"). (CR 486-516.)

*Trial court's disposition:*      The trial court granted the temporary injunction. (CR 536-539.) Later that day, without any motion from Appellees, notice of hearing, or argument, the trial court dismissed Appellants' claims without prejudice. (CR 540-541.) Appellants filed their second amended petition in intervention the next day. (CR 552-572.)

## STATEMENT REGARDING ORAL ARGUMENT

Normally, Appellants would request oral argument given the complex and important issues before the Court. However, Appellants recognize that in a similar appeal involving the Commissioner and Appellees, Case No. 15-24-00101-CV, these same arguments are likely to be raised and decided in oral argument before this appeal is submitted. Thus, if the Court believes that its resolution of this case's specific issues would benefit from oral argument, then Appellants will gladly offer it. But, given the unique nature of these dual appeals, Appellants do not believe oral argument is necessary under these circumstances.

**ISSUE PRESENTED**

I.    The trial court abused its discretion in granting Appellees' temporary injunction because the evidence only showed the Commissioner's compliance with the law, and Appellees did not demonstrate that any action of the Commissioner would harm Appellees.

**STATEMENT OF FACTS**

**I.      Factual Background**

The Texas Constitution mandates that the Legislature establish a public education system to ensure the "general diffusion of knowledge." TEX. CONST. art. VII., § 1. The Legislature has defined this right as ensuring that all Texas children have access to quality education that enables them "to achieve their potential and fully participate now and in the future in the social, economic, and educational opportunities of our state and nation." TEX. EDUC. CODE § 4.001(a). In more than 1,200 school districts and across approximately 8,000 campuses, Texas educators strive to meet that goal. (3RR29.)

The Legislature's framework for Texas' public education system has four pillars: (1) a state curriculum, (2) a standardized test to measure the quality of the curriculum being taught, (3) accreditation standards to hold schools accountable for their performance, and (4) sanctions and remedial measures to ensure those accreditation standards are met. *Neeley v. W. Orange-Cove Consol. ISD*, 176 S.W.3d 746, 764 (Tex. 2005). The State Board of Education sets forth standards for essential knowledge and skills, known as TEKS, which is short for Texas Knowledge and Essential Skills, and the STAAR test measures whether these standards are being taught effectively. *See* TEX. EDUC. CODE § 39.021; 19 TEX. ADMIN. CODE chs. 110-13; TEX. EDUC. CODE § 39.023(a).

But to ensure that school districts are held accountable for their performance, the Legislature has enacted an annual grading system, which the Commissioner oversees and makes public. TEX. EDUC. CODE § 39.054(a). This system allows school districts to measure their performance against their peers and improve deficient areas. (3RR28.) It also allows parents and taxpayers to understand how the schools they fund and send their children to measure up. (3RR231-33.)

### A. To ensure accountability in public education, the Legislature requires the Commissioner to grade school performance.

This grading system follows the familiar "A" through "F" letter grade rubric, with an "A" grade representing exemplary performance and an "F" grade meaning the school's performance is unacceptable. *Id*. § 39.054(a). The Legislature also requires the Commissioner to assign "A" through "F" ratings across three domains: (1) student achievement, (2) school progress, and (3) closing the gaps.[1] *Id*. §§ 39.053(c)(1)-(3), .054(a).

The grading of these domains varies based on school level. In elementary and middle schools, the only measure of student achievement is the STAAR test. (2RR83.) But for high schools, the formula for student achievement is different:

- 40% is measured by the STAAR test,

---

[1] For this last domain, which measures differences in performance between students of different racial, ethnic, and socio-economic groups, schools are measured under a variety of metrics aligned with federal standards. (2RR187.)

15

- 40% is measured by college, career, and military readiness ("CCMR"), and

- 20% is measured by graduation rate. (2RR83.)

School progress is also measured differently based on school level. Once again, for elementary and middle schools, the only measure is the STAAR test. (2RR185.) For high schools, the measure is a blend of the STAAR test and CCMR. (Id.)

The Legislature requires that overall accountability ratings be measured under the following rubric:

- 70% comes from a campus's student achievement or school progress domain, whichever is higher, and

- 30% comes from the school or district's progress in closing the gaps.

*See* TEX. EDUC. CODE §39.054(a-1); (2RR82-83.) A proportionality formula is used to measure school district performance based on their campus's performance. (2RR84; 4RR813.) To ensure accountability, the Legislature requires that the Commissioner release these accountability ratings each year on or before August 15. TEX. EDUC. CODE § 39.054(a-3).

**B.    As part of a transparent process, the Commissioner releases an accountability manual explaining the metrics and standards for the accountability ratings.**

These accountability ratings are not arbitrary, nor are their criteria secret. The Legislature requires that the Commissioner apply indicators of learning and achievement, define, establish, and modify state standards, and adopt rules

evaluating campus and district performance. *See* TEX. EDUC. CODE § 39.053(a), (f); TEX. EDUC. CODE § 39.054(a). These indicators, standards, and rules may be adopted "at any time during a school year before the evaluation of a school district or campus." *Id*. § 39.0541.

Before the accountability ratings are released, the Commissioner publishes an accountability manual that explains "all of the details" of the accountability system, including what indicators are applied, how they are calculated, and the scores needed to reach a grade, otherwise known as "cut scores." (3RR31-32.) The 2023-2024 academic year accountability manual was 300 pages and was published in the Texas Register as a proposed rule in February 2024, 49 Tex. Reg. 951, 951-55 (Feb. 23, 2024), which was far earlier than previous years. (3RR32-33.) After being submitted to the Secretary of State and published, the accountability manual became effective on May 14. 49 Tex. Reg. 3280, 3280-85 (May 10, 2024); 19 TEX. ADMIN. CODE § 97.1001.

Unlike some previous years, the 2024 accountability manual did not change the standards for student performance. (2RR199; 3RR33-34.) Though the Legislature requires the Commissioner to periodically raise accountability standards, TEX. EDUC. CODE § 39.053(f), these standards are no longer increased annually so that schools can better compare their year-on-year performance. (3RR33-35.) So for the 2024 accountability manual, schools knew the standards that would be applied

17

in November 2023, when the 2023 accountability manual was adopted. *See* 48 Tex. Reg. 6593, 6593-605 (Nov. 10, 2023).

To make this data more accessible to the public, the Legislature requires that the Commissioner provide districts with a document that "explains the accountability performance measures, methods, and procedures that will be applied for that school year." TEX. EDUC. CODE § 39.0542(a). The document must also be provided in a format that districts may easily distribute to parents of students and interested members of the public. *Id.* § 39.0542(b). This year, the Commissioner circulated this document in March 2024. (CR 212; 4RR810-14.)

C. **The accountability manual relies on cut scores to ensure every school or district can achieve an A grade and looks back to the preceding year's data when necessary so that the manual can be published timely.**

In 2017, the Legislature required that it be mathematically possible for all campuses and districts to achieve an A grade. TEX. EDUC. CODE § 39.054(b); (3RR37.) This meant the Commissioner could no longer use a bell-curve system, otherwise, regardless of performance, some schools and districts would fail. (3RR37-38.) Instead, the Commissioner uses a "cut score" system, whereby any school or district reaching a certain threshold receives a certain letter grade, no matter how many do. (3RR38.)

The accountability manual also relies on the prior year's scores to determine CCMR rates since that data, which includes, among other things, ACT/SAT scores

18

and military enlistments, is not finalized until after the August 15th deadline to publish the accountability manual. TEX. EDUC. CODE § 39.053(a-1)(1)(B). (2RR194-195; 3RR86-87, 240-41.)

> **D.** **Since the STAAR test is a crucial element of the Commissioner's accountability grades, it undergoes extensive and independent review to ensure consistency and reliability.**

To measure student performance consistently, the Texas Education Agency ("TEA") uses the STAAR test as its "assessment instrument." *See* (3RR39-40); TEX. EDUC. CODE § 39.053(c). The Legislature requires that before such "assessment instruments" are administered, they are determined "to be valid and reliable by an entity that is independent of the agency and of any other entity that developed the assessment instrument." *Id.* § 39.023(a-11).

Before a question is included on the STAAR test, it undergoes a development process that lasts 1.5-2 years. (CR283; 3RR53.) The review is completed by an independent group of teachers to ensure all questions are grade-level appropriate and aligned with the TEKS. (3RR52, 75.) Questions are also tested by a representative sample of students, and the results are then analyzed to ensure no question exhibits bias toward any specific group. (3RR52-53.)

### 1. The Texas Technical Advisory Committee, an independent group of experts, advises the TEA concerning the STAAR test's validity and reliability.

The Legislature requires the Commissioner to appoint a technical advisory committee to provide advice on "the development of valid and reliable assessment instruments." TEX. EDUC. CODE § 39.02302(a). Committee members must be experts in educational assessments and psychometrics, *id.*, and may compensated or reimbursed for their work, *id.* § 39.02302(c). The Texas Technical Advisory Committee ("TTAC") serves that function.

Its nine members include university professors, researchers, and other field experts in psychometrics, standard setting, assessing special populations, design and interpretation of assessments, and content-area expertise. (CR 216-17; 2RR96.) None of the members are employed by the State, TEA, or any of TEA's vendors. (2RR96.) They are "not beholden to" the TEA or shy about giving their opinions. (3RR58-59.) The TTAC does not "develop" the STAAR test; it is "developed" by the TEA's vendors and the TEA. (3RR68-69.) However, the TTAC does assist in determining that the STAAR test is valid and reliable. (3RR68-69.)

The TTAC holds semi-annual, two-day meetings, with its members reviewing a number of documents and reports in advance. (2RR98-99.)[2] During these

_____

[2] The TTAC members receive daily stipends of approximately $1,500, commensurate with the stipends of other technical advisory committee members in other states. (2RR93-94.)

meetings, the TTAC provides the TEA with recommendations on the development and administration of the STAAR test, reviews the results of the test's administration, and provides suggestions for improvement. (2RR89.) The TTAC also reviews changes to the STAAR test and its implementation and outcomes. (2RR101-02.)

Following the meeting, TTAC prepares notes and recommendations for TEA. (2RR99.) The TEA takes this independent body's assessment of the STAAR test's validity and reliability seriously. (2RR101, 150.) If the TTAC counseled the TEA that a change to the STAAR test would invalidate it, the TEA would not make that change. (3RR58.)

2. **To reduce costs and save time, an automated scoring system is used to review written answers on the STAAR test, and its accuracy is subject to rescoring.**

The only substantive change for the STAAR test in the 2023-2024 academic year was the introduction of a hybrid scoring system that automated certain written responses. (3RR41-43; 2RR102; 3RR59.) Following legislative changes, the STAAR test now includes some "constructed response" questions, through which students provide written answers rather than selecting from a predefined list, such as true/false or multiple-choice questions. (2RR104; 3RR50.) One or two "constructed response" questions are found in reading/language arts, science, and social studies tests; math has none. (3RR50-51.) Given that using human graders to score all

constructed-response questions would have cost an estimated $15-$20 million and required significant time, TEA introduced and implemented an automated scoring engine to assist with the scoring in the 2023-2024 academic year. (4RR774.)

The automated system grading these constructed responses is fed approximately three thousand human-scored responses to set standards by which it can identify which responses align with particular scores. (3RR188-89.) But the system does not make assumptions. (3RR190.) If the engine encounters a response that it cannot properly evaluate, it does not guess at a score; instead, it flags that response for a human scorer to review. (3RR189-190.) Human scorers also provide an additional safeguard by scoring 25% of the constructed responses, and their scores are compared to the automated system's results to ensure consistency. (3RR223; 4RR1556-57; 3RR146-47.)

This is not new or untested technology. Automated scoring engines have been used for about twenty years, and at least twenty other states use them. (2RR103-104, 161.) The TTAC advised the TEA that they be adopted to save time and money and comparison with previous STAAR tests show consistent results. (2RR160-61; 4RR816-60.) Finally, there is a process that allows parents or districts to review student answers and corresponding questions, and if they believe the scoring system erred, the student's answers can be resubmitted for human grading. (3RR61-62.)

## II. Procedural History

Three days before the Commissioner was to release the statutorily required accountability ratings on the statutorily required deadline, five school districts filed suit to stop him. (CR5-31.) Subsequently, these school districts obtained a temporary restraining order that prevented the Commissioner from publishing the ratings. (CR32-35, 36-39.) Appellees' suit alleged that the Commissioner acted ultra vires in four respects:

1.   The Commissioner did not give timely notice of the standards and measures by which their performance would be judged. (CR503-05.)

2.   The Accountability Manual does not allow districts and campuses to earn an A rating because the Manual uses CCMR rates from the prior year. (CR491-92, 505-06.)

3.   No independent entity has determined the STAAR test to be valid and reliable. (CR498-99, 501-02.)

4.   The automated scoring systems for the STAAR test fails to produce reliable information about student performance. (CR499-502.)

After the Commissioner answered, Appellant Brandon Hodges, as Trustee for District Five of Midland ISD, filed his petition in intervention. (CR99-107.) Hodges sought declaratory relief that, among other things:

1.   TEX. EDUC. CODE § 39.054(a) requires the Commissioner to release the accountability ratings and that Appellees' actions had prevented him from doing so for all public schools, including those for which Hodges was responsible;

23

2. As a result, Appellees had prevented Hodges from comparing his district's performance with comparable districts of similar sizes and racial and economic demographics, as required under TEX. EDUC. CODE § 11.1516(c);

3. Appellees had also prevented Hodges from performing his duties under Tex Educ. Code § 11.151(b)(2), and (4)-(6) because he could not develop comprehensive goals for his district without the accountability ratings that would determine his district's relative performance.

(CR104-06, ¶24.)

On September 13, 2024, three days before the temporary injunction hearing began, two trustees from Round Rock ISD joined Hodges' suit in Appellants' first amended verified petition in intervention. (CR 391-413.) Appellants' first amended verified petition reiterated the declaratory relief sought in Hodge's original petition in intervention and likewise sought attorney's fees under Chapter 37 of the Texas Civil Practices and Remedies Code. (CR397-399.) Appellees filed no opposition to or motion to strike Appellants' first amended petition in intervention or suggested that Appellants had no justiciable interest in the suit.

On the first day of the hearing, twenty-eight additional districts joined the lawsuit. (CR486-516.) The hearing concluded on the following day, September 17, 2024. (3RR.) The next day, September 18, 2024, the trial court granted Appellees' application for a temporary injunction. (CR536.) The trial court's temporary injunction concluded that implementing the A-F accountability system would be

24

ultra vires conduct that would harm Appellees, and enjoined the Commissioner from issuing any accountability ratings. (CR536-39.)[3]

Subsequently, it sua sponte dismissed Appellants' first amended petition in intervention without prejudice to refiling. (CR540-41.) The court provided no notice of its intention to dismiss, nor did it allow Appellants an opportunity to be heard on the dismissal. On September 19, 2024, Appellants filed their Second Amended Verified Petition in Intervention, asserting in part that the dismissal of the First Amended Verified Petition in Intervention violated Appellants' right to notice and a hearing, and that the same was never opposed by any party. (CR554-55.) Appellants' notice of appeal followed. (CR594-95.)

## SUMMARY OF THE ARGUMENT

This case presents a simple but pivotal question affecting the advancement of Texas schools. Did the Commissioner exceed his authority in simply following a law that requires that he release accountability grades for Texas school districts? Appellants intervened to support the Commissioner in enforcing the law because they understand the importance of accountability in improving school performance.

The stakes at issue demand context for Appellees' complaints. Appellees do not challenge the constitutionality of the scheme or question its purpose. Appellees

---

[3] This is the second year in a row that a group of school districts have sought (successfully) to enjoin the Commissioner from releasing the accountability ratings. (CR 395, ¶17, 556, ¶18.)

only offer qualms about the Commissioner's methods and unsubstantiated speculation about what greater accountability would demand from them. But neither is evidence of ultra vires acts, much less resulting harm. Instead, Appellees attempt to read into the statute nonexistent requirements to avoid the accountability the Legislature has empowered the Commissioner to enforce.

The Court should reject this invitation to ignore applicable law and stymie the advancement of Texas students and frustrate the ability of Trustees, like Appellants, to evaluate their performance and improve their schools. Appellees lack any evidence that the Commissioner acted outside his authority, and they lack evidence that the release of the accountability ratings will harm them.

### ARGUMENT AND AUTHORITIES

**I.    The trial court abused its discretion in granting Appellees' temporary injunction because the evidence only showed the Commissioner's compliance with the law, and Appellees did not demonstrate that any action of the Commissioner would harm Appellees.**

**A.    Standard of Review**

Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex. 1993); *State v. Walker,* 679 S.W.2d 484, 485 (Tex. 1984). A reviewing court should reverse an order granting injunctive relief only if the trial court abused that discretion. *Walling,* 863 S.W.2d at 58; *Walker,* 679 S.W.2d at 485. The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's action

was so arbitrary that it exceeded the bounds of reasonable discretion. *Johnson v. Fourth Ct. of Appeals,* 700 S.W.2d 916, 918 (Tex. 1985); *Davis v. Huey,* 571 S.W.2d 859, 861–62 (Tex. 1978).

### B. Applicable Law

#### 1. Temporary injunctions should only be issued to preserve the status quo after an applicant has presented evidence of a probable right to the relief sought and imminent harm if the extraordinary relief is not granted.

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Walling,* 863 S.W.2d at 57; *Electronic Data Sys. Corp. v. Powell,* 508 S.W.2d 137, 139 (Tex. Civ. App.—Dallas 1974, no writ). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Walling,* 863 S.W.2d at 57. To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Walling,* 863 S.W.2d at 57; *Sun Oil Co. v. Whitaker,* 424 S.W.2d 216, 218 (Tex. 1968).

A probable right of success on the merits is shown by alleging a cause of action and presenting evidence that tends to sustain it. *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 597 (Tex. App.—Amarillo 1995, no writ).

A trial court cannot award the ultimate relief sought in the suit via a temporary injunction. The sole purpose of a temporary injunction is to maintain the status quo

pending a resolution of the merits at a trial. *Walling*, 863 S.W.2d at 58; *Munson v. Milton,* 948 S.W.2d 813, 815 (Tex. App.—San Antonio 1997, pet. denied). The status quo is the last actual peaceable, noncontested status that preceded the controversy. *Tex. Aeronautics Comm'n v. Betts*, 469 S.W.2d 394, 398 (Tex. 1971).

2. **A governmental official does not act ultra vires by making an erroneous decision within his authority, and the only relief available for an ultra vires claimant is prospective relief to make the governmental official comply with statutory or constitutional provisions.**

"Although governmental entities and officers are generally immune from liability absent the government's waiver or consent, such immunity does not prohibit suit against a state official if the official's actions are ultra vires." *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018) (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)). "To state an ultra vires claim, the plaintiff must allege and prove that the named officials acted without legal authority or failed to perform a ministerial act." *Id.* (citing *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017)). "The fact that the official has some limited discretion to act under the applicable law does not preclude an ultra vires claim if the claimant alleges that the official exceeded the bounds of that authority, or the conduct conflicts with the law itself." *Id.* (citing *Hous. Belt & Terminal Ry. Co. v. City of Hous.*, 487 S.W.3d 154, 163 (Tex. 2016)). Thus, ultra vires "claims 'depend on the scope of the state official's authority,' not the quality of the official's decisions." *Id.* (quoting *Hall*, 508

28

S.W.3d at 234). In other words, "it is not an ultra vires act for an official to make an erroneous decision within the authority granted." *Id*. (quoting *Id.* at *Hall*, 508 S.W.3d at 242).

The only relief for an ultra vires claimant is to bring the governmental official "into compliance with statutory or constitutional provisions." *Tex. Educ. Agency v. Houston Indep. Sch. Dist.*, 660 S.W.3d 108, 116 (Tex. 2023) (quoting *Chambers-Liberty Cntys. Nav. Dist. v. State*, 575 S.W.3d 339, 348 (Tex. 2019)). Thus, "only prospective relief is available." *Id*.

### C.   Discussion[4]

   1.   **Appellees did not demonstrate that they were likely to succeed on the merits because the evidence shows no ultra vires acts.**

      a.   **The Commissioner provided timely notice and Appellees' arguments to the contrary require the Court to add words to the statute.**

At the temporary injunction hearing, Appellees' counsel only identified one provision about which the Commissioner allegedly failed to give Appellees timely

---

[4] To the extent there is any challenge to Appellants' right to appeal the trial court's decision, Appellants preemptively note that their petition in intervention was filed before the trial court's order granting Appellees' temporary injunction. (CR391-411.) Thus, Appellants were parties to the temporary injunction proceedings. *See Bell v. Craig*, 555 S.W.2d 210, 212 (Tex. App.—Dallas 1977, no writ) ("Since the petition in intervention was filed before the trial court entered its order granting the temporary injunction, it was, absent an order striking the intervention, sufficient to make Bell a party to the temporary injunction proceedings.") And although the trial court's injunction does not personally enjoin Appellants, it "effectively prevents [them] from proceeding with [their petition in intervention], which seeks the release of the accountability ratings at issue in the trial court's injunction, so they also have standing to appeal. *Id*. The trial court's subsequent

29

notice. (2RR18, 52.) This was section § 39.0542, which requires the Commissioner to provide districts with a "document in a simple, accessible format that explains the accountability performance measures, methods, and procedures that will be applied for that school year." TEX. EDUC. CODE § 39.0542(a).

But there is no debate that the Commissioner provided this document to Appellees in March 2024. (CR 212; 4RR810-14.) Appellees' complaint is instead that the Commissioner did not adopt the document as a rule and that it was not provided timely. (CR505; 2RR18.) These fail for the same reason: the statute does not require what Appellees wish.

Unlike section 39.054(a), which requires the 2024 Accountability Manual to be adopted as a rule, section 39.0542 has no provision for this explanatory summary. Appellees' invitation to read into the statute a non-existent requirement should be summarily rejected, and to the extent that the trial court enjoined the Commissioner on this basis, it abused its discretion. *See Rodriguez v. Doe*, 614 S.W.3d 380, 383 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("We cannot rewrite a statute in the guise of interpreting it. We can neither add to nor subtract from statutory language.")

---

*sua sponte* dismissal of Appellants' petition in intervention without prejudice, while errant, does not affect this analysis, as Appellants have since refiled an amended petition in intervention. (CR552-572.) *See Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657–58 (Tex. 1990) (holding that "the court [may not] deny a potential litigant the right to intervene if there has been no objection to intervention based on sufficient cause").

(citing *Gunn v. McCoy*, 554 S.W.3d 645, 672 (Tex. 2018); *Pedernal Energy v. Bruington Eng'g*, 536 S.W.3d 487, 492 (Tex. 2017)).

The same is true for Appellees' argument that the Commissioner's provision of these explanatory materials was untimely (2RR118) because the statute has no set date. It only requires disclosure of the standards before those standards are applied:

a) ***Each school year***, the commissioner shall provide each school district a document in a simple, accessible format that explains the accountability performance measures, methods, and procedures ***that will be applied for that school year*** in assigning each school district and campus a performance rating under Section 39.054.

TEX. EDUC. CODE ANN. § 39.0542.

Again, it is undisputed that the Commissioner did so. The summary documents were provided in March 2024. (CR212). If the Legislature wished for this action to occur at the beginning of "each school year," it could have surely used those words. But, in the absence of such a requirement, the trial court abused its discretion to the extent it enjoined the Commissioner on this ground.[5]

---

[5] But even if the temporary injunction could be supported on this basis, the trial court still got the remedy wrong. Instead of preventing the Commissioner from releasing this year's accountability ratings, the trial court should have simply ordered him to prospectively comply with either the (nonexistent) rulemaking or publication dates. *See Hidalgo Cnty. Water Improvement Dist. No. 3 v. Hidalgo Cnty. Irrigation Dist. No. 1*, 669 S.W.3d 178, 183 (Tex. 2023) ("[S]overeign immunity does not prohibit a suit . . . seeking only prospective relief requiring the official's compliance with the law."). The trial court has no discretion to prohibit what the Legislature has mandated on these grounds.

**b.    The Commissioner did not act ultra vires in relying on the only available data to calculate CCMR rates and that data did not make it mathematically impossible for districts to receive an A grade.**

Appellees also presented no evidence of ultra vires acts concerning their argument that by relying on CCMR rates from the prior year, the 2024 Accountability Manual made it "mathematically impossible" for every district to receive an A grade. (CR 506.) This argument presumes the Commissioner's awareness that not all schools had an 88% CCMR rate in 2022-2023, which is the threshold for an A grade in that element. (2RR198.) Appellees misconstrue this provision, which the Commissioner faithfully followed.

To recap, the Legislature's "mathematically possible" mandate required that the previously used bell-curve grading formula be discontinued; otherwise, it would be mathematically impossible for all districts to obtain an A grade. (3RR37-38.) So, the Commissioner uses "cut scores," which allow every district to obtain an A, if they meet a certain, consistent threshold. (3RR38.) Additionally, the Commissioner could not use this year's CCMR rate because that data is not available yet. (3RR86-87, 240-41.) So, to follow the Legislature's requirement of including CCMR rates in his accountability ratings, the Commissioner must use the most recently available data. (3RR86; TEX. EDUC. CODE § 39.053(a-1)(1)(B.)) Finally, the Commissioner must "modify standards to continuously improve student performance" to make

Texas a national leader in preparing students for postsecondary success. TEX. EDUC. CODE § 39.053(f).

This cannot be done if the Commissioner is forced to lower the requirements for CCMR rates to ensure that it is factually possible for every school to obtain an A grade based on the preceding year's data. If Appellees' interpretation were the law, then the improvement of educational standards would be held hostage by the lowest performing districts. That cannot be what the Legislature intended. If it were, the Legislature would not have required the Commissioner to "modify standards to continuously improve student performance." *City of Denton v. Grim*, 694 S.W.3d 210, 215 (Tex. 2024), reh'g denied (Aug. 30, 2024) ("We presume the Legislature enacts statutes with full knowledge of the existing law.").

Context also demands that conclusion because the "mathematical[ly] possible" requirement only applies to a district's overall accountability ratings, not its CCMR rate, which is just one component of the overall accountability ratings. *See* TEX. EDUC. CODE § 39.054(b); (2RR83, 185; 3RR239-40.) To that point, Appellees offered no evidence that because of their CCMR score, it would be mathematically impossible for them to achieve an A grade. So, to the extent that the Court granted the temporary injunction on this basis, it abused its discretion, as there is no evidence of any ultra vires act. Rather, there is only evidence that the Commissioner followed the statute's requirements.

### c. The Commissioner followed the law in having the TTAC, an independent third party, confirm the validity and reliability of the STAAR test.

Appellees also accuse the Commissioner of acting ultra vires in relying on the TTAC to confirm the validity and reliability of the STAAR test, but the evidence fails to show any action outside of his authority. Again, Appellees' contentions are rooted in misconceptions about the statute's requirements.

The first concerns Appellees' misconception that the TTAC develops the STAAR test and, therefore, is not independent. (2RR60-61.) Section 39.023(a-11) requires that an entity independent of the TEA or its vendors that developed the assessment instrument confirm its validity and reliability. TEX. EDUC. CODE § 39.023(a-11). The Legislature's intention here is obvious: neither the TEA nor its vendors should grade their own work in developing the assessment instrument; that should be left to an independent party. The evidence shows the Commissioner has followed this requirement, and Appellees' attempt to conflate the TTAC's advisory role with the development of the STAAR test should be rejected.

To be clear, the TEA and its vendors develop the STAAR test. (3RR68.) The TTAC has no role in that process. (2RR122-23; 3RR68.) And its members have no financial incentive since they are not employed by the TEA or its vendors. (2RR96, 92-93, 96, 116, 152.) Thus, the TTAC satisfies section 39.023(a-11)'s independent entity requirement because it, not the TEA or its vendors who created the test,

34

determines the STAAR test's validity and reliability. To the extent the trial court relied on this ground to enjoin the Commissioner from issuing the accountability ratings, it abused its discretion since there is no evidence that he acted outside his authority.

The second misconception concerns Appellees' belief that a validity study is required every time the STAAR test is changed. (2RR174-76.) This argument, again, adds language to the statute. The statute only requires that an independent entity determine an instrument's validity and reliability. TEX. EDUC. CODE § 39.023(a-11). That has been done for this year. (3RR55-59, 66-67.) It does not require that a formal "study" be completed whenever changes are made to the STAAR test. (3RR66-67.) If the Legislature intended a study to be completed in such a context, it could have easily said so. However, since it did not, the Commissioner exercised his discretion in relying on the TTAC to confirm the validity and reliability of the STAAR test.

But assuming arguendo that the Commissioner acted beyond his authority in these respects, the trial court had no authority to enjoin the release of the accountability ratings because Appellees' only relief is prospective. *See Tex. Educ. Agency v. Houston Indep. Sch. Dist.*, 660 S.W.3d at 116. The STAAR test has already been administered for this year, so the only way to bring the Commissioner back into compliance, assuming that was necessary, would be to order him to make

changes for the forthcoming year. Thus, even if the Commissioner acted ultra vires in these respects, the trial court's injunction must still be dissolved.

### d. The evidence shows no action by the Commissioner outside his authority in administering the STAAR test.

Appellees' final challenge claims that the Commissioner acted outside his authority by using an automated scoring system for the STAAR test. (CR499-501.) But Appellees offer no evidence that the automated system is unreliable or that its implementation was an ultra vires act. Finally, even if Appellees are correct, the remedy is to order the Commissioner to rectify this issue for future assessments, not to prohibit him from following the law.

Appellees' challenge is rooted in section 39.023(a-1), which provides that the TEA "develop assessment instruments . . . in a manner that allows, to the extent practicable . . . the score a student receives to provide reliable information relating to a student's satisfactory performance." They claim that using the automated scoring system threatens the reliability of the information concerning student performance. But Appellees only offer speculation, not evidence, regarding reasons for variations in test scores.

Indeed, Appellees only offered unconnected data points without any statistical analysis that these deviations resulted from the automated scoring system. For instance, Appellees pointed to a decline in fifth-grade science scores despite there only being one constructed response question on that test, and offered no evidence

36

that this single question affected these scores. (3RR51.) Appellees also pointed to an increase in the number of zeroes given on the constructed response questions without acknowledging that higher scores also increased and blamed the automated scoring system. (3RR179.) However, Appellees offered no comparative analysis showing that the difference in these scores was attributable to the automated scoring system and not other factors, like changes in the grading rubric. (3RR178-182.) To put a finer point on it, Appellees cited no evidence that, due to automated scoring, a single student received a zero on a constructed response instead of some other grade. (3RR61.)

In contrast, multiple witnesses from the TEA and TTAC, including a psychometrician, testified that the automated scoring systems reliably grade student responses. (2RR102-07, 148, 155-167; 3RR207, 209-25.) They also explained that this is not some unproven technology; rather, it has been used for twenty years, and at least twenty other states use it. (2RR103-04, 161.) Finally, they testified that the decision to implement the automated scoring system was not taken lightly. The TTAC advised the TEA that it should be adopted, and the TEA rigorously tested and refined the system until the TTAC was satisfied that it produced comparable scores to human graders. (2RR160-61; 4RR816-60, 821, 828-29; 2RR106.) Appellees offered no evidence that the automated system was deficient in any way, only inductive speculation.

Nor did Appellees demonstrate how this conduct constituted an ultra vires act since the statute gives the Commissioner some discretion in developing the assessment:

> (a-1) The agency shall develop assessment instruments required under Subsection (a) in a manner that allows, ***to the extent practicable***:
>
> > (1) the score a student receives to provide ***reliable*** information relating to a student's satisfactory performance for each performance standard under Section 39.0241; and

TEX. EDUC. CODE. § 39.023(a-1) (emphasis added). The Commissioner thus has at least some discretion in determining the practicability of the STAAR test's development and the reliability of the scores its grading system produces. Regardless, Appellees did not offer evidence that the Commissioner's decision to use a strenuously tested and reliable method of grading student scores that saves millions annually, which independent experts have recommended the TEA adopt, was an ultra vires act in these respects.

In any event, if a remedy is required, it is not to stop the Commissioner from doing what the Legislature has mandated. If any "prospective" relief is warranted, it would require changes to the STAAR test's grading, not stopping the release of the accountability ratings. *See Tex. Educ. Agency v. Houston Indep. Sch. Dist.*, 660 S.W.3d at 116. If the converse were the rule, any minor deviation from the statute, real or imagined, would allow courts to override the Legislature's mandates. That

would be a dysfunctional way to run the TEA, and it would no doubt provide a disservice to Texas students, their parents, and taxpayers.

## 2. Regardless, Appellees offered no evidence of imminent and irreparable harm.

Although Appellees offered no evidence that would justify any ultra vires finding, the Court could avoid resolving those questions and reverse the trial court on the sole ground that Appellees offered no evidence that releasing the accountability ratings would harm them. Appellees offered a parade of horribles— bad ratings could lead to funding cuts and eventually school takeovers—but offered no evidence that any of them would receive lower ratings due to the Commissioner's challenged acts. (CR 507-08.) *See, e.g., Fuentes v. Fuentes*, 656 S.W.3d 703, 714 (Tex. App.—El Paso 2022, no pet.) ("Showing probable and imminent injury is not satisfied by evidence that the harm or injury is 'possible' or 'feared.'") (quotation omitted). So, assuming that some schools would receive lower accountability ratings due to the Commissioner's changes, the evidence does not establish that they were before the trial court, and it had no discretion to issue the temporary injunction on behalf of non-litigants.

## CONCLUSION AND PRAYER

Appellees' complaints against the Commissioner boil down to complaints about how he exercised his discretion in carrying out his statutorily required task. Right or wrong, those actions are not ultra vires. And, in any event, Appellees have

39

offered no evidence showing they would likely suffer harm. Their hypothetical harm is reason alone to dissolve the trial court's temporary injunction.

This is the second consecutive year that a small group of school districts have sought and succeeded in preventing the Commissioner from following the law and fulfilling the Texas Constitution's promise. With thirty-three school districts joining, Appellees represent roughly 2.75% of Texas school districts. By granting them a temporary injunction, the trial court has established a tyranny of the minority, on the flimsiest of grounds, that only encourages further attacks on the Commissioner's discretion and will only further limit the educational outcomes for young Texans.

Accordingly, Appellants respectfully pray that the Court dissolve the trial court's temporary injunction and grant Appellants any further relief to which they may be entitled.

Respectfully submitted,

By: _____

**BYRON K. HENRY**
State Bar No. 24008909
byron.henry@solidcounsel.com
**WALKER STEVEN YOUNG**
State Bar No. 24102676
walker.young@solidcounsel.com

**SCHEEF & STONE, L.L.P.**
2600 Network Boulevard, Suite 400
Frisco, Texas 75034
Telephone: (214) 472-2100
Facsimile: (214) 472-2150

**ATTORNEYS FOR APPELLANTS**

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies that, in accordance with Rule 9.4 of the Texas Rules of Appellate Procedure, this document contains 6,197 words as determined by Microsoft Word for Office 365, which is the software used to generate the document. This word count does not include words contained in the sections of the Brief excluded from the word limit by Rule 9.4(i)(1).

_____
**BYRON K. HENRY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Appellants' Brief has been delivered pursuant to TEX. R. APP. P. 9.5 to all counsel as indicated below on January 22, 2025:

**Via Electronic Filing/Service**

**David Campbell**
dcampbell@808west.com
**Kevin O'Hanlon**
kohanlon@808west.com
**O'HANLON DEMERATH & CASTILLO**
808 West Avenue
Austin, Texas 78701
(512) 494-9949

*Attorneys for Appellees*

_____
**BYRON K. HENRY**

**INDEX TO APPENDIX**

Order Granting Appellees' Temporary Injunction..........................................Tab 1

Order Dismissing Appellants' First Amended Petition in Intervention without Prejudice .........................................................................................Tab 2

09/18/2024 11:39:07 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-24-005018

CAUSE NO. D-1-GN-24-005018

| | | |
|---|---|---|
| Pecos-Barstow-Toyah Independent School District, Crandall Independent School District, Forney Independent School District, Fort Stockton Independent School District, and Kingsville Independent School District, | § § § § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § | TRAVIS COUNTY, TEXAS |
| v. | § § | |
| Mike Morath, in his official capacity as Commissioner of Education, | § § § § | 201ST JUDICIAL DISTRICT |
| *Defendant.* | § | |

## ORDER GRANTING PLAINTIFFS' APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF

On September 16-17, 2024, the Court heard Plaintiffs' Original Application for Temporary Injunctive Relief (Plaintiffs' Application) filed on August 12, 2024. Attorneys David Campbell and Kevin O'Hanlon appeared for Plaintiffs Pecos-Barstow-Toyah ISD, Crandall ISD, Forney ISD, Fort Stockton ISD, and Kingsville ISD. Attorneys Kelsey Warren and Marlayna Ellis (OAG) and Matthew Tiffee (TEA) appeared for Defendant Commissioner Mike Morath.

After considering the evidence, including all admitted exhibits and witness testimonies presented by the parties during this hearing, and the arguments of counsel, the Court FINDS that Plaintiffs have made a sufficient showing of a probable right to relief on their claims pleaded and proved against Defendant Mike Morath, in his official capacity, because Defendant's conduct and/or threatened conduct is without legal authority and is ultra vires. Plaintiffs have shown a probable right to relief on the merits of their claims.

The Court FINDS that Plaintiffs have made a sufficient showing of a probable right to relief on their contention that, under a proper construction of Chapter 39 of the Texas Education Code, Defendant Mike Morath, in his official capacity, is not authorized to assign A-F performance ratings for the 2023–2024 school year.

The Court FINDS that Plaintiffs have made a sufficient showing that Defendant's implementation of the A-F accountability system for the 2023–2024 school year is unlawful, ultra vires conduct that violates Texas law and would cause probable, imminent, and irreparable injury or harm to Plaintiffs.

The Court FINDS that Plaintiffs will have no adequate remedy at law unless Defendant Mike Morath is temporarily enjoined from assigning A-F performance ratings for the 2023–2024 school year pending further order of this Court or final trial on the merits of this suit, whichever event should first occur.

The Court FINDS that the issuance of a temporary injunction will maintain the status quo during the pendency of such order.

The Court FINDS that the balance of potential, irreparable harm that would be caused by a denial of the requested temporary injunction outweighs any potential harm to Defendant, and that the public interest is served by granting this temporary injunction. Absent this Order, the Commissioner will engage in ultra vires conduct by assigning the 2023–2024 performance ratings and will disturb the status quo, to the extent the assignment and publication of these performance ratings cannot be judicially reviewed or undone.

Nothing in this Order shall prevent Commissioner Morath from using data from the 2023–2024 school year to apply for and/or obtain federal funds to be used for low performing campuses or from working with federal authorities to facilitate distribution of these federal funds to Texas school

districts. Additionally, nothing in this Order shall prevent Commissioner Morath from assigning performance ratings of "Not Rated" for the 2023–2024 school year pursuant to Texas Education Code section 39.054(a–4).

The Court FINDS that, during this hearing, Defendant informed the Court that he intends to file an appeal of this Court's Order if Plaintiffs' request for temporary injunctive relief is granted. Accordingly, in the event the Commissioner appeals this Order, the Court delays supersedeas until the court of appeals decides whether to grant temporary orders under Rule 29.3 of the Texas Rule of Appellate Procedure.

The Court FINDS that a $100 bond is sufficient security for any foreseeable harm or compensable damages that could result from the granting of this temporary injunction until further order of this Court or final judgment on the merits. This temporary injunction shall become effective immediately.

IT IS THEREFORE ORDERED that Defendant Mike Morath, in his official capacity as Commissioner of Education and his officers, agents, servants, representatives, attorneys, employees, designees, and officials acting in concert with him or on his behalf, are prohibited from assigning, issuing, and/or distributing A-F performance ratings for the 2023–2024 school year until this Court issues a final judgment in the above-styled and numbered action, whichever event occurs first.

IT IS FURTHER ORDERED that trial on the merits of this case is set for February 10, 2025, at 9:00 a.m. in Travis County, Texas.

IT IS FURTHER ORDERED that the Clerk of this Court shall forthwith issue this Order Granting Plaintiffs' Application for Temporary Injunctive Relief and writ of temporary injunction in conformity with the law and the terms of this Order.

IT IS FURTHER ORDERED that in the event an interlocutory appeal is filed by Defendant, this Order will not be superseded until the court of appeals issues an order granting or denying a request for temporary orders under Rule 29.3 of the Texas Rule of Appellate Procedure.

SIGNED AND ENTERED on this eighteenth day of September 2024, at __10:00 A.m.__ in Travis County, Texas,

_____
DANIELLA DESETA LYTTLE
Judge Presiding, 261st District Court

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office On 11/21/2024 02:37:17

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

ORDER GRANTING PLAINTIFFS' APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF    Page 4 of 4
Cause No. D-1-GN-24-005018

539

CAUSE NO. D-1-GN-24-005018

| | | |
|---|---|---|
| Pecos-Barstow-Toyah Independent School District, | § § § § § § § | IN THE DISTRICT COURT OF |
| Crandall Independent School District, | | |
| Forney Independent School District, | | |
| Fort Stockton Independent School District, and | | |
| Kingsville Independent School District, | | |
| *Plaintiffs,* | § § | TRAVIS COUNTY, TEXAS |
| v. | § § | |
| Mike Morath, in his official capacity as Commissioner of Education, | § § § | |
| *Defendant.* | § § | 201ST JUDICIAL DISTRICT |

## ORDER DISMISSING THE SCHOOL BOARD MEMBER INTERVENORS' FIRST AMENDED VERIFIED PETITION IN INTERVENTION

On September 17, 2024, the Court considered the First Amended Verified Petition in Intervention filed by Brandon Hodges, individually and in his official capacity as Trustee of District for Midland ISD, and Mary Bone and Danielle Weston, individually and in their official capacities as Trustees of Round Rock ISD, filed on September 13, 2024 (the School Board Member Intervenors). The Court called the case on September 16, 2024, for an in-person hearing as set for this cause, and there was no appearance for or by the School Board Member Intervenors.

After considering the evidence, all pleadings on file in this cause, and the arguments of counsel, if any, the Court FINDS that the School Board Member Intervenors did not assert any of the ultra vires claims brought by Plaintiffs originally. Therefore, the School Board Member Intervenors did not meet the threshold of showing a justiciable interest in this lawsuit, i.e., a showing that these intervenors could have brought this lawsuit in their own names and recover at least a part of the relief sought in the original suit.

ORDER DISMISSING THE SCHOOL BOARD MEMBER INTERVENORS'
FIRST AMENDED VERIFIED PETITION IN INTERVENTION
Cause No. D-1-GN-24-005018

Page 1 of 2

540

The Court FURTHER FINDS that allowing the School Board Member Intervenors' intervention in this case would inject new issues into this case that are separate and different from Plaintiffs' ultra vires claims asserted against Defendant Commissioner.

IT IS THEREFORE ORDERED that the School Board Member Intervenors' First Amended Verified Petition in Intervention is DISMISSED WITHOUT PREJUDICE for want of prosecution.

Signed on this eighteenth day of September 2024,

_____
DANIELLA DESETA LYTTLE
Judge Presiding, 261st District Court

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office On 11/21/2024 02:37:17

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

ORDER DISMISSING THE SCHOOL BOARD MEMBER INTERVENORS' FIRST AMENDED VERIFIED PETITION IN INTERVENTION
Cause No. D-1-GN-24-005018

Page 2 of 2

541

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Walker Young on behalf of Walker Young
Bar No. 24102676
walker.young@solidcounsel.com
Envelope ID: 96500867
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Appellants' Brief and Appendix in Support
Status as of 1/23/2025 7:08 AM CST

Associated Case Party: Brandon Hodges, individually and in his official capacity as Trustee of District for Midland ISD

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Byron K.Henry | | byron.henry@solidcounsel.com | 1/22/2025 10:05:15 PM | SENT |
| Melissa Diaz | | melissa.diaz@solidcounsel.com | 1/22/2025 10:05:15 PM | SENT |
| Walker StevenYoung | | walker.young@solidcounsel.com | 1/22/2025 10:05:15 PM | SENT |

Associated Case Party: Pecos-Barstow-Toyah Independent School District

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kevin O'Hanlon | 15235500 | kohanlon@808west.com | 1/22/2025 10:05:15 PM | SENT |
| David Campbell | | dcampbell@808west.com | 1/22/2025 10:05:15 PM | SENT |